IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ANGELA LYUBARSKY,

        Plaintiff,

v.                                          No. CIV-12-0873 LAM

CAROLYN W. COLVIN, Acting Commissioner
of the Social Security Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on *Plaintiff's Motion to Reverse and Remand Commissioner's Administrative Decision (Doc. 27)*, filed April 22, 2013. In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to the undersigned United States Magistrate Judge to conduct all proceedings and enter a final judgment in this case. *See* [*Docs. 26* and *29*]. On June 10, 2013, Defendant filed *Defendant's Response to Plaintiff's Motion to Reverse and/or Remand the Administrative Agency Decision (Doc. 30)*, and, on June 26, 2013, Plaintiff filed *Plaintiff's Reply to Defendant's Response (Doc. 31)* and *Notice of Completion of Briefing on Plaintiff's Motion to Reverse and Remand Commissioner's Administrative Decision (Doc. 32)*. The Court has considered Plaintiff's motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Docs. 17, 18, 19* and *20*]. For the reasons set forth

below, the Court **FINDS** that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED**.

# I.  Procedural History

On April 16, 2010, Plaintiff filed an application for Disability Insurance Benefits (hereinafter "DIB"), alleging that she became disabled on November 24, 2006.  [*Doc. 17-8* at 10-11].  Plaintiff stated that she became disabled due to: toxic encephalopathy, gastroparesis, depression, chronic insomnia, neuropathy, fibromyalgia, multiple chemical sensitivity, and electromagnetic sensitivity. [*Doc. 17-9* at 12].  The application was denied at the initial level on August 10, 2010, finding that Plaintiff was not disabled on any date through September 30, 2009, which was the date she was last insured for disability benefits (*Doc. 17-6* at 6-10) and at the reconsideration level on October 11, 2010 (*id.* at 13-17).  Pursuant to Plaintiff's request (*id.* at 19-20), on July 12, 2011, Administrative Law Judge James S. Carletti (hereinafter "ALJ") conducted a hearing.  [*Doc. 17-4* at 2-44].  At the hearing, Plaintiff was represented by George Johnston.[1]  *See id.* at 4 and [*Doc. 17-3* at 17].  Plaintiff appeared for the hearing via teleconference.  [*Doc. 17-4* at 4].  After Plaintiff testified at the hearing, she asked to be excused from the hearing and ended her call.  *Id.* at 11-27 and 31.  In addition, medical expert Dr. Jenesse[2] was present and testified at the hearing (*id.* at 4

---

[1]Although the hearing transcript states that Mr. Johnston is an attorney (*see Doc. 17-4* at 2), the ALJ indicates in his opinion that Mr. Johnston is not an attorney (*see Doc. 17-3* at 17).  On the "Appointment of Representative" form, Mr. Johnston checked the box that he is a "non-attorney."  *See* [*Doc. 17-7* at 11].

[2]The Court notes that the medical expert's name is spelled "Jenesse (phonetic)" in the transcript of the hearing (*Doc. 17-4* at 2), but is spelled "Janese" by the ALJ in his opinion (*Doc. 17-3* at 29).  It appears that the correct spelling is "Janese," according to the resume attached to the ALJ's opinion.  *See* [*Doc. 17-7* at 35].

and 27-39), and vocational expert Ara Sagherian[3] (hereinafter "VE") was present and testified at the hearing (*id.* at 4 and 39-41).

On August 25, 2011, the ALJ issued his decision, finding that under the relevant sections of the Social Security Act, Plaintiff was not disabled.  [*Doc. 17-3* at 17-31].  Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 11-12), and, on June 22, 2012, the Appeals Council denied Plaintiff's request for review (*id.* at 2-9), which made the ALJ's decision the final decision of the Commissioner.  On August 14, 2012, Plaintiff filed her complaint in this case. [*Doc. 1*].

## II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh

---

[3]The hearing transcript states that the vocational expert is "Ara Sagherian (phonetic)" (*Doc. 17-4* at 2), however the ALJ states in his opinion that the vocational expert is Behnush Barzegarian (*Doc. 17-3* at 17).  It appears that the correct name is "Behnush Barzegarian," according to the Curriculum Vitae resume attached to the ALJ's opinion. [*Doc. 17-7* at 37].

the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted).  While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).   "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## III. Applicable Law and Sequential Evaluation Process

For purposes of DIB, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a).  In light of this definition for disability, a five-step sequential evaluation

process (SEP) has been established for evaluating a disability claim. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## IV. Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on August 27, 1963. [*Doc. 17-8* at 10]. Plaintiff stated at her hearing that she has bachelor's degrees in pharmacy and nursing, and she is a registered nurse. [*Doc. 17-4* at 6]. Plaintiff also stated that she was a certified Russian interpreter (*id.*), and is a licensed real estate agent (*id.* at 7). Plaintiff has worked as an interpreter/consultant for a private attorney and various courts; as an owner of a realtor business; and as a registered nurse at a hospital. [*Doc. 17-9* at 14]. Plaintiff alleges that she became disabled on November 24, 2006, and she is unable to work because she has toxic encephalopathy, gastroparesis, depression, chronic insomnia, neuropathy, fibromyalgia, multiple chemical sensitivity, and electromagnetic sensitivity. *Id.* at 12.

Plaintiff's medical records document treatment and records from: Kaiser Permanente (*Doc. 17-11* at 7-56), (*Doc. 18-1* at 2-44) and (*Doc. 18-7* at 34-41); Trenton E. Moyer, M.D. (*Doc. 18-2* at 3-9), (*Doc. 19-4* at 35-36) and (*Doc. 20-1* at 13-20); Sharp Mesa Vista Hospital (*Doc. 18-3* at 4-48), (*Doc. 18-4* at 2-8) and (*Doc. 19-5* at 8-13); UCSD Medical Center (*Doc. 18-5* at 6-43), (*Doc. 18-6* at 2-15), (*Doc. 19-4* at 21-25, 31-34) and (*Doc. 20-1* at 49-50); Dan Harper, M.D. (*Doc. 18-6* at 17-22) and (*Doc. 19-4* at 38-57); William J. Rea, M.D. (Environmental Health Center - Dallas) (*Doc. 18-6* at 25), (*Doc. 18-8* at 4-65), (*Doc. 19-1* at 2-53), (*Doc. 19-2* at 2-61), (*Doc. 19-3* at 2-63) and (*Doc. 19-4* at 2-19 and 58-65); San Diego Center for Sleep Medicine (*Doc. 19-4* at 26-28); A. Ray Mabaquiao, MD. (*id.* at 29-30); San Diego Digestive Disease (*Doc. 19-5* at 2-5); San Diego Endoscopy Center (*id.* at 18-22); Center for Advanced Medicine (*Doc. 19-6* at 2-39) and (*Doc. 20-1* at 23-26); Bryan Schmidt, PT, CHT (*Doc. 20-1* at 4-10); Old Town Chiropractic (*Doc. 20-2* at 2-3); American Sleep Medicine (*Doc. 20-1* at 27-35); Encinitas Chiropractic (*Doc. 20-1* at 38-46); Richard Greenfield, M.D. (*id.* at 47-48); and Advance Medical Therapeutics (*id.* at 51-53).

Plaintiff's medical records also include: a Case Analysis by J. Hartman, M.D., dated July 20, 2010 (*Doc. 18-6* at 31-33); a Mental Residual Functional Capacity Assessment by H. Skopec, M.D., dated July 28, 2010 (*id.* at 34-36); a Psychiatric Review Technique by H. Skopec, M.D., dated July 28, 2010 (*id.* at 37-47); a Physical Residual Functional Capacity Assessment by J. Ross, M.D., dated October 4, 2010 (*Doc. 18-7* at 15-20); a Case Analysis by J. Ross, M.D., dated October 4, 2010 (*id.* at 21-23); a Psychiatric Case Analysis by H. Amado, M.D., dated October 8, 2010 (*id.* at 24-25); a Mental Residual Functional Capacity Assessment by Dan Harper,

M.D., dated March 9, 2011 (*Doc. 19-4* at 47-49); and a Mental Residual Functional Capacity Assessment by William Rea, M.D., dated April 11, 2011 (*id.* at 63-65). Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 24, 2006, her alleged onset date, through September 30, 2009, which was the date she was last insured for disability benefits . [*Doc. 17-3* at 19]. At step two, the ALJ found that Plaintiff has the following severe impairments: "fibromyalgia, depression and anxiety disorder NOS." *Id.* At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). *Id.* at 19-20.

Before step four, the ALJ determined that Plaintiff has the RFC to perform light work except that Plaintiff "is limited to non-public simple repetitive tasks with minimal contact with supervisors and co-workers." *Id.* at 21. In support of the RFC finding, the ALJ stated that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." *Id.* at 25. The ALJ stated that, regarding Plaintiff's "alleged severe reactions to light, chemicals and electromagnetic waves, the [ALJ] finds no medical documentation of a medically determinable impairment." *Id.* The ALJ stated that he took "into consideration the nature, location, onset, duration, frequency, radiation, and intensity of [Plaintiff's] pain, as well as precipitating and

aggravating factors; the type, dosage, effectiveness, and adverse side effects of any pain medication; other treatment, other than medication, for relief of pain; functional restrictions; and [Plaintiff's] daily activities," and found Plaintiff's allegations of disabling pain to be "out of proportion with the record." *Id.* at 26. The ALJ noted that Plaintiff's "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty;" that Plaintiff testified that she could only use the computer for five minutes due to sensitivity to electromagnetic waves, but, at the same time, "there are multiple references to [Plaintiff] extensively researching medical conditions on the internet." *Id.* The ALJ further noted that "there was no third party testimony or functional information to corroborate [Plaintiff's] testimony," and that, while Plaintiff "alleged performing few, if any, house chores," Plaintiff "lives alone and has not reported any particular help in maintaining the residence." *Id.* The ALJ also found Plaintiff to not be credible based on inconsistencies in her medical records, for example: Plaintiff failed to tell doctors that she had tested negative for sleep apnea, and reported in 2009 that she had been diagnosed with sleep apnea; Plaintiff reported the removal of a mass from her liver, when it had been removed from her flank; Plaintiff alleged that she cannot take any medications, however, Plaintiff takes Ativan, Ambient and Vicodin on a regular basis; Plaintiff alleged severe nausea and vomiting, however she has been consistently noted to be obese such that her vomiting is not severe enough to cause any weight loss; and Plaintiff reported to multiple physicians that her symptoms started with exposure to radiation during a stomach emptying test in 2006; however she told Dr. Harper that her problems started in 2003 with exposure to mold, followed by exposure to furniture stripper in 2006, and then the stomach test. *Id.*

The ALJ discussed the opinions from Plaintiff's treating physicians, Drs. Harper and Rea, who opined that Plaintiff had multiple impairments and marked limitations in several categories of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. *Id.* at 27-28. The ALJ stated that he gave these opinions "little weight" because: the opinions "appear on fill-in-the-blank forms provided by [Plaintiff's] representative in anticipation of the hearing;" Dr. Harper saw Plaintiff only two times since 2009, and consulted with her once by phone before filling out his assessments; Dr. Rea's "treatment records consist only of allergy testing and injections;" neither doctor "provided any objective medical testing results or objective observations to support their diagnoses or functional assessments;" the doctors' opinions conflict with substantial evidence in the record, which documents less severe limitations; Dr. Harper is a family physician who has less training than specialists who have examined Plaintiff, so his opinion is afforded less weight; neither doctor is a psychiatrist, so they are not qualified to assess Plaintiff's mental abilities; and Dr. Rea provided contradictory psychiatric limitations in his forms. *Id.* at 29. The ALJ gave great weight to state agency medical consultant Dr. Ross' opinion that Plaintiff "was limited to light work with occasional climbing, balancing, stooping, kneeling, crouching and crawling secondary to documented left knee degeneration and hiatal hernia causing gastrointestinal reflux," and that Plaintiff's "environmental sensitivity illness was not a medically determinable impairment." The ALJ stated that Dr. Ross' "opinion is well supported by the medical evidence, including [Plaintiff's] medical history and clinical and objective signs and lack thereof." *Id.* The ALJ gave little weight to state agency medical consultant Dr. Hartman and medical expert Dr. Janese, who opined that Plaintiff "had no severe physical impairments," because the ALJ stated

that Plaintiff "does have objective evidence of cartilage degeneration of the left knee and a hiatal hernia." *Id.* Finally, the ALJ gave great weight to the opinions of state agency psychiatrists Drs. Skopec and Amado, who opined that Plaintiff "was limited to non-public simple repetitive tasks," because the ALJ stated that the evidence "shows that [Plaintiff] is focused on her perceived physical impairments, but is able to do extensive research on the internet, live alone, [and] pay her own bills despite her anxiety over her physical problems." *Id.* At step four, the ALJ found that Plaintiff was unable to perform any past relevant work, so the ALJ proceeded to the fifth step. *Id.*

At the fifth and final step, the ALJ noted that Plaintiff was 46 years old at the time of her alleged onset date, has at least a high school education, and is able to communicate in English. *Id.* at 30. The ALJ stated that the VE was asked "whether jobs existed in the national economy for an individual with [Plaintiff's] age, education, work experience, and [RFC]," and the VE testified that such an individual would be able to perform the requirements of representative occupations such as an addresser, weight-tester, and final assembler. *Id.* at 30-31. The ALJ stated that "the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles." *Id.* at 31. The ALJ concluded that Plaintiff is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." *Id.* The ALJ, therefore, determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## V.  Analysis

Plaintiff contends that the ALJ erred in her RFC assessment because: (1) the ALJ improperly rejected the opinions of Plaintiff's treating physicians in favor of the opinions of non-examining medical consultants and without developing the record regarding Plaintiff's psychiatric impairments

(*Doc. 27-1* at 19-22); (2) the ALJ failed to properly consider Plaintiff's somatoform disorder at step three (*id.* at 22-29); and (3) the ALJ failed to properly consider Plaintiff's diagnoses of chronic fatigue and chemical and environmental sensitivity or explain why he rejected those diagnoses (*id.* at 29-33).  Plaintiff asks the Court to remand her case for a reevaluation of the evidence.  *Id.* at 33. Defendant disputes Plaintiff's contentions and argues that the ALJ's decision should be affirmed because the ALJ properly evaluated the medical evidence, substantial evidence supports the ALJ's step three finding, and the ALJ properly evaluated Plaintiff's impairments.  [*Doc. 30* at 5-16].

## A.  The ALJ's Consideration of Medical Opinions

### *1.  Plaintiff's Treating Physicians' Opinions*

Plaintiff first contends that the ALJ erred by rejecting the opinions of Plaintiff's treating physicians, Drs. Harper and Rea, and by, instead, giving the opinions of three of the non-examining state agency consultants great weight.  [*Doc. 27-1* at 19-22].  Plaintiff states that the assessments by the state agency consultants were insufficient to support the ALJ's RFC assessment because they "consisted of check-box forms" and failed to mention Plaintiff's fibromyalgia, anxiety, autonomic nerve system dysfunction, neuropathy, complex regional pain syndrome, post traumatic stress disorder, chronic allergies and sensitivities, and chronic fatigue syndrome.  *Id.* at 21.  Plaintiff also contends that the mental RFC and Psychiatric Review Technique forms "consisted only of check marks and no specific record support or evidence to support [the consultant's] conclusions."  *Id.* Plaintiff contends that, because "[t]here is no other evidence regarding [Plaintiff's] functional limitations apart from her own testimony and the opinions of Drs. Rea and Harper, all of which the ALJ rejected. . . ., the ALJ was not in a position to make any RFC determination because there is

no evidence to support such a finding." *Id.* at 22 (citing *Baker v. Barnhart*, No. 03-7941, 84 Fed. Appx. 10, 14-15, 2003 WL 22905238 (10th Cir. Dec. 10, 2003) (unpublished)).  Therefore, Plaintiff contends that the ALJ should have recontacted Plaintiff's physicians for clarification of the basis of their opinions.  [*Doc. 27-1* at 22].

In response, Defendant states that "[t]he ALJ properly discounted the opinions of Dr. Rea and Dr. Harper, finding their opinions were conclusory, inconsistent with other examining physicians' opinions and the record as a whole, and their assessments were dated after Plaintiff's date last insured."  [*Doc. 30* at 8].  Defendant further contends that "[t]he ALJ did not credit Dr. Ross's opinion over that of Dr. Harper or Dr. Rea," but "[r]ather, the ALJ found Dr. Ross's opinion was consistent with the record as a whole."  *Id.*  Defendant disputes Plaintiff's contention that there is not sufficient medical evidence to support the ALJ's RFC assessment, and notes that the opinions of Drs. Devin, Kramar, Mabaquiao, and Spinko all support the ALJ's RFC assessment. *Id.* at 9.  Defendant contends that the ALJ was not required to recontact Plaintiff's treating physicians for clarification of their opinions because "[t]he record contains ample evidence from several examining physicians for the ALJ to consider in determining what weight to give to the medical source opinions."  *Id.* at 9-10.

When "evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct."  *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011); *see also Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir.2007).  First, the ALJ "should consider whether the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial

evidence in the record." *Pisciotta*, 500 F.3d at 1077 (citations omitted).  If the answer to both these questions is "yes," then the ALJ "must give the opinion controlling weight."  If, however, the treating physician's opinion is not entitled to controlling weight, "the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight."  *Id.*  When a treating physician's opinion is not given controlling weight, it is still entitled to deference and must be weighed using relevant factors such as: the length of treatment and frequency of examination, and the nature and extent of the treating relationship; the extent to which the opinion is supported by relevant evidence, particularly medical signs and laboratory findings; the extent to which the opinion is consistent with the record as a whole; the doctor's specialization in the medical field upon which an opinion is given; and other factors tending to support or contradict the opinion.  *See* 20 C.F.R. § 404.1527(c).  Although the "ALJ must evaluate every medical opinion in the record [recognizing that] the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional," ultimately, the ALJ's decision must contain "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir.2004) (citations and internal quotation marks omitted).

Dr. Harper diagnosed Plaintiff with irritable bowel syndrome, environmental allergies, chronic sinusitis/bronchitis, fibromyalgia, chronic fatigue syndrome, depression, metabolic syndrome, situational anxiety, post traumatic stress disorder and multiple chemical sensitivities. [*Doc. 19-4* at 50].  Dr. Harper opined that Plaintiff "is permanently and completely impaired and incapable of performing even sedentary gainful employments and was disabled by the standards set

forth by the AMA guidelines with 79% whole person impairment." *Id.* at 52.  Dr. Harper opined

that Plaintiff: could sit less than one hour a day; could stand and/or walk less than one hour a day;

could not push or pull with either her right or left hand; could not use her feet for repetitive foot

controls; could occasionally lift/carry up to five pounds; could occasionally climb, balance and

crawl; could never stoop, kneel, crouch or reach above shoulder level; had severe restrictions in her

ability to be around unprotected heights or moving machinery or driving an automobile; had total

restriction from exposure to marked changes in temperature and humidity or exposure to dust, fumes

and gases; and suffered from fatigue due to severe fibromyalgia with mitochondrial dysfunction and

had pain from fibromyalgia, neuropathy and reflex sympathetic dystrophy. *Id.* at 38-40.  He found

that Plaintiff has affective and anxiety related disorders with extreme limitations in: activities of

daily living; concentration, persistence, pace; and social functioning.  *Id.* at 42-46.  He also found

that Plaintiff has marked limitations in: the ability to work in coordination with or in proximity to

others without being distracted by them; the ability to complete a normal workday and work week

without interruptions from psychologically based symptoms; performing at a consistent pace without

unreasonable number and length of rest periods; the ability to accept instructions and respond

appropriately to criticism from supervisors; the ability to respond appropriately to changes in the

work setting; and the ability to set realistic goals or make plans independently of others.  *Id.* at 47-

49.

Dr. Rea opined that Plaintiff could sit, stand or walk for less than one hour a day; would need

the opportunity to alternate sitting and standing at will throughout the day; could not perform

repetitive motion tasks with either hand; could not use her feet for repetitive movements; could

occasionally lift and carry up to 10 pounds; could occasionally stoop, kneel and reach above

shoulder level; could never climb, balance, crouch, or crawl; was totally restricted from work at

unprotected heights or around moving machinery, exposure to marked changes in temperature and

humidity, driving automotive equipment or exposure to dust, fumes and gases.  [*Doc. 18-8* at 4-5].

He also opined that Plaintiff's pain and fatigue were disabling to the extent they would prevent even

sedentary work.  *Id.* at 5-6.  He also found that Plaintiff has affective and anxiety related disorders

that impose marked limitations in: activities of daily living; concentration, persistence, and pace;

and social functioning.  [*Doc. 19-4* at 58-62].  He also found that Plaintiff has marked limitations

in: remembering locations and work-like procedures; understanding, remembering and carrying out

very short and simple instructions or understanding and remembering detailed instructions;

maintaining concentration and persistence for extended periods; performing activities within a

schedule, maintaining regular attendance, and being punctual within customary tolerances;

sustaining an ordinary routine without special supervision; working in coordination with or in

proximity to others without being distracted by them; making simple work-related decisions;

completing a normal workday and work week without interruptions from psychologically based

symptoms; performing at a consistent pace without an unreasonable number and length of rest

periods; responding appropriately to changes in the work setting; and travel in unfamiliar places or

using public transportation.  *Id.* at 63-65.

      The ALJ stated that he gave "little weight" to the opinions of Drs. Harper and Rea.

[*Doc. 17-3* at 29].  In support of this finding, the ALJ noted that: the opinions "appear on

fill-in-the-blank forms provided by [Plaintiff's] representative in anticipation of the hearing;"

Dr. Harper saw Plaintiff only two times since 2009, and consulted with her once by phone before filling out his assessments; Dr. Rea's "treatment records consist only of allergy testing and injections;" neither doctor "provided any objective medical testing results or objective observations to support their diagnoses or functional assessments;" the doctors' opinions conflict with substantial evidence in the record, which documents less severe limitations; Dr. Harper is a family physician who has less training than specialists who have examined Plaintiff, so his opinion is afforded less weight; neither doctor is a psychiatrist, so they are not qualified to assess Plaintiff's mental abilities; and Dr. Rea provided contradictory psychiatric limitations in his forms. *Id.* The ALJ states that he afforded great weight to the opinions of state agency medical consultant Dr. Ross and state agency psychiatrists Drs. Skopec and Amado. *Id.* at 29.

The Court finds that the ALJ failed to provide "reasons that are sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight," because the ALJ failed to cite or discuss why the opinions of Drs. Harper and Rea were inconsistent with the evidence in the record. *Hamlin*, 365 F.3d at 1215. While the ALJ concludes that the opinions of Drs. Harper and Rea are not well-supported by objective medical testing or observations, and are not consistent with the other substantial evidence in the record, the ALJ fails to specifically cite to other evidence in the record with which the opinions conflict. Defendant attempts to supply the missing evidence that conflicts with the treating physicians' opinions (*see Doc. 30* at 9, stating that the opinions of Drs. Devin, Kramar, Mabaquiao, and Spinko support the ALJ's RFC assessment), however this is an impermissible *post hoc* rationalization. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that

16

reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons for giving less weight to or rejecting the treating physician's opinion" after the fact) (citation omitted). While the ALJ provides a summary of Plaintiff's medical history starting in 2006 (*see Doc. 17-3* at 21-24), the ALJ fails to explain why he found that this evidence conflicts with the opinions of Drs. Harper and Rea, or what portions of the opinions of Drs. Harper and Rea with which the evidence conflicts. The ALJ also fails to explain why he found this other evidence more believable than the opinions of Drs. Harper and Rea.

In addition, while the ALJ appears to have considered several of the relevant factors under 20 C.F.R. § 404.1527(c) and states that the treating physicians' opinions are entitled to "little weight," the ALJ does not specify what portions of the opinions were given little weight. These physicians appear to be Plaintiffs' only treating physicians, and their opinions include numerous diagnoses and limitations that are not accounted for in the ALJ's RFC determination. The ALJ's conclusory statement that the opinions of Drs. Harper and Rea are entitled to "little weight," without any explanation of which opinions the ALJ is giving little weight to and how those opinions are accounted for in the ALJ's RFC determination, fails to satisfy the requirement that the ALJ must adequately explain why a treating physician's opinion is not given deference, even when the opinion is found to not be entitled to controlling weight. *See* Soc. Sec. Rep. 96-2p, 1996 WL 374188, at *4 (explaining that "[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight"); *see also Robinson*, 366 F.3d at 1082 (explaining that an ALJ must give good reasons for the weight assigned

to a treating physician's opinion so that a subsequent reviewer can clearly analyze the appropriateness of the weight).  Since the ALJ's RFC determination does not account for most of the diagnoses and findings of extreme or marked limitations by Drs. Harper and Rea, respectively, it appears that the ALJ rejected the majority of Plaintiff's treating physicians' opinions, and this was done without any specific explanation of how the treating physicians' opinions were inconsistent with the other medical evidence presented in the record, in violation of the requirements regarding the deference that should be given treating physicians' opinions.  *See Hamlin*, 365 F.3d at 1219 (finding that the ALJ erred in failing "to sufficiently highlight how the treating physician's evaluations were inconsistent with the other medical evidence presented in the record"); and *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003) ("The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.") (citation and internal quotation marks omitted).  The Court also questions the ALJ's decision to discount Dr. Harper's opinions because they appear on forms with check boxes.  As the Tenth Circuit held in *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008), check-box forms from a treating physician, as compared to a non-treating doctor, cannot be discounted merely because they are check-box forms, where the treating physician "made notes or circled the medical terms for [the doctor's] findings on [the doctor's] own medical form clearly set up to record the results of a thorough physical examination [and] it was not the agency's checklist RFC form."  Here, while the forms filled out by Drs. Harper and Rea are similar, if not identical, to the agency's RFC form, Dr. Harper made notes on the forms of his medical findings.

*See* [*Doc. 19-4* at 38-55]. The ALJ's rejection of this opinion because it was on a check-box form is, therefore, questionable under the holding of *Carpenter*. For the reasons stated above, the Court concludes that the ALJ failed to comply with the legal requirements of *Pisciotta*, 500 F.3d at 1077, and 20 C.F.R. § 404.1527(d)(2), in considering Plaintiff's treating physicians' opinions. On remand, the ALJ should consider these opinions regarding Plaintiff's functional capacity in compliance with those legal requirements.

### 2. *State Agency Physicians' Opinions*

Plaintiff also contends that the ALJ erred by assigning the opinions of state agency medical consulting physicians great weight, when those opinions consisted of forms and did not include specific medical evidence in the record to support those physicians' findings. [*Doc. 27-1* at 21]. The ALJ gave great weight to state agency medical consultant Dr. Ross' opinion regarding Plaintiff's limitation to light work with occasional climbing, balancing, stooping, kneeling, crouching and crawling, and that Plaintiff's environmental sensitivity illness was not a medically determinable impairment, and gave great weight to the opinions of state agency psychiatrists Drs. Skopec and Amado that Plaintiff was limited to non-public, simple, and repetitive tasks. [*Doc. 17-3* at 29]. The ALJ, however, failed to provide any support for giving these opinions great weight, other than stating that Dr. Ross' opinion is "well supported by the medical evidence, including [Plaintiff's] medical history and clinical and objective signs and lack thereof." *Id.*

"An ALJ is bound by the opinions of agency medical consultants only insofar as they are supported by evidence in the case record." *Lee v. Barnhart*, No. 03-7025, 117 Fed. Appx. 674, 678, 2004 WL 2810224 (10th Cir. Dec. 8, 2004) (unpublished) (citing Soc. Sec. R. 96-6p,

19

1996 WL 374180, at *2).  "If the ALJ relies heavily on such opinions, as the ALJ did here, the opinions must themselves find adequate support in the medical evidence."  *Lee*, 117 Fed. Appx. at 678.  The opinions of Drs. Ross, Skopec, and Amado do not consider the diagnoses and marked or extreme limitations found by Plaintiffs' treating physicians, as discussed above, so they are, therefore, in conflict with the evidence presented by Plaintiff's treating physicians.  Outside of the opinions of Plaintiff's treating physicians, the evidence in the record further shows that Plaintiff was diagnosed with an anxiety disorder (*Doc. 18-6* at 2); major depressive disorder and somatoform disorder (*Doc. 19-4* at 36), and chronic psychophysiologic insomnia (*Doc. 19-4* at 28), none of which were considered in the state-agency consultants' forms, and which appear to contradict portions of these state-agency physicians' opinions.  The Court, therefore, finds that on remand the ALJ should provide a more detailed explanation for attributing great weight to state agency opinions that are contradicted by evidence in the record, in compliance with Soc. Sec. R. 96-6p, 1996 WL 374180 at *2 and Soc. Sec. Rep. 96-8p, 1996 WL 374184 at *7 ("The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.").

### 3.  *Recontacting Plaintiff's Treating Physicians*

Plaintiff contends that, because the ALJ rejected the opinions of Drs. Harper and Rea, as well as Plaintiff's testimony, the record was devoid of substantial evidence upon which to base the ALJ's RFC determination, so the ALJ should have recontacted Plaintiff's treating physicians to clarify the basis of their opinions.  [*Doc. 27-1* at 22].  Defendant responds that "[t]he record contains ample evidence from several examining physicians for the ALJ to consider in determining what weight to

give to the medical source opinions.  [*Doc. 30* at 9-10] (citing to several pages from the record).  The Tenth Circuit has held that an ALJ is required to recontact a treating physician when the ALJ finds that the treating physician's records do not give a reason for his opinion that the claimant in that case was unable to work.  *Robinson*, 366 F.3d at 1084.  "If evidence from the claimant's treating doctor is inadequate to determine if the claimant is disabled, an ALJ is required to recontact a medical source, including a treating physician to determine if additional needed information is readily available."  *Id.* (citations omitted) (citing 20 C.F.R. §§ 404.1512(e)(1) and 416.912(e)(1)).  The Court notes that, effective March 26, 2012, these regulations governing an ALJ's duty to recontact a medical source have been changed (*see* 77 Fed. Reg. 10651-01, 2011 WL 7404303), and now, if a medical opinion is insufficient to determine whether a claimant is disabled, or inconsistent with the evidence in the record, an ALJ "may recontact [a] treating physician, psychologist, or other medical source" but may also request additional existing records, ask the claimant to undergo a consultative examination, or ask for more information from another source, including from the claimant (*see* 20 C.F.R. §§ 404.1520b(c)(1)-(4) and 416.920b(c)(1)-(4)).  Because the ALJ found that Drs. Harper and Rea did not "provide[] any objective medical testing results or objective observations to support their diagnoses or functional assessments" (*Doc. 17-3* at 29), it was the ALJ's responsibility to seek additional evidence from these treating physicians, seek additional existing records, ask Plaintiff to undergo a consultative examination, or ask for more information from another source or from Plaintiff.  *See Daniell v. Astrue*, No. 09-2310, 384 Fed. Appx. 798, 803, 2010 WL 2588174 (10th Cir. June 29, 2010) (unpublished) ("When both treating physicians adopt similar functional limitations, the ALJ should not reject those limitations out of hand.  Rather, the

21

ALJ should give treating physicians an opportunity to provide the reasons for the limitations they assessed."). The Court, therefore, finds that, on remand, if the ALJ finds that the evidence upon which the opinions of Drs. Harper and Rea are based is inadequate, the ALJ should recontact those doctors to give them an opportunity to provide the reasons for the limitations they have assessed, or request additional evidence in accordance with 20 C.F.R. §§ 404.1520b and 416.920b.

### B.  The ALJ's Failure to Consider Somatoform Disorder at Step Three

Next, Plaintiff contends that the ALJ erred in failing to consider whether Plaintiff's somatoform disorder met or equaled Listing 12.07 at step three, and in failing to consider Plaintiff's somatoform disorder when making his credibility findings. [*Doc. 27-1* at 22-29]. In response, Defendant contends that substantial evidence supports the ALJ's finding that Plaintiff does not meet the criteria for Listing 12.07, and that the ALJ properly considered Plaintiff's credibility. [*Doc. 30* at 10-14].

A somatoform disorder exists when there are "[p]hysical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. 404, Subpt. P, App. 1, § 12.07. A claimant meets the required level of severity for this listing when both A and B (set forth below) are satisfied:

 A. Medically documented by evidence of either:

  1. A history of multiple physical symptoms of several years duration, beginning before age 30, that have caused the individual to take medicine frequently, see a physician often and alter life patterns significantly; or

  2. Persistent nonorganic disturbance of one of the following:

   a. Vision; or

22

      b.      Speech; or

      c.      Hearing; or

      d.      Use of a limb; or

      e.      Movement and its control (e.g., coordination disturbance, psychogenic seizures, akinesia, dyskinesia[)]; or

      f.      sensation (e.g., diminished or heightened).

    3.      Unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury;

AND

B.      Resulting in at least two of the following:

    1.      Marked restriction of activities of daily living;

    2.      Marked difficulties in maintaining social functioning;

    3.      Marked difficulties in maintaining concentration, persistence, or pace; or

    4.      Repeated episodes of decompensation, each of extended duration.

*Id.*

Here, Dr. Moyer diagnosed Plaintiff with a somatoform disorder on May 11, 2009 (*Doc. 19-4* at 36). The possibility that Plaintiff may be suffering from a somatoform disorder was also discussed during the hearing, with the ALJ asking the medical expert, Dr. Jenesse, why somatoform disorder was not suspected or pursued. *See* [*Doc. 17-4* at 32-38]. It appears as if the issue was not developed further at the hearing because it was determined that it was outside of Dr. Jenesse's expertise, which is neurologic disorders, not psychiatric. *Id.* at 37-38. In his opinion, the ALJ did not discuss Plaintiff's diagnosis with somatoform disorder, nor did he discuss Listing 12.07. The

Court finds that the ALJ's failure to do so is in error because it leaves the Court with no record as to why the ALJ found the evidence regarding Plaintiff's impairments insufficient to satisfy Listing 12.07. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that the ALJ's failure to discuss the evidence or his reasons for determining that the claimant was not disabled at step three was in error because "[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that appellant's impairments did not meet or equal any Listed Impairment, and whether he applied the correct legal standards to arrive at that conclusion"); *see also Peck v. Barnhart*, No. 05-4090, 214 Fed. Appx. 730, 734-35, 2006 WL 3775866 (10th Cir. Dec. 26, 2006) (unpublished) (holding that the ALJ erred in failing to discuss Listing 12.05 or his reasons for rejecting its applicability to the claimant beyond a bare conclusion that the exhibits and testimony in the record did not establish that a Listing was met or equaled). Defendant contends that the ALJ did not err in failing to discuss Listing 12.07 because Plaintiff failed to show that she meets or equals all of the criteria of the Listing. [*Doc. 30* at 10-11]. Defendant further contends that the findings of marked or extreme limitations by Drs. Harper and Rea do not support a finding that Plaintiff meets the criteria for Listing 12.07 because the ALJ noted that neither doctor is a psychiatrist, so they are not qualified to provide an assessment of Plaintiff's mental abilities. *Id.* at 11-12. As the Court has set forth above, the ALJ's decision to give little, or no, weight to the opinions of Plaintiff's treating physicians was not substantially justified under the requirements set forth by the Tenth Circuit for consideration of treating physicians' opinions. Defendant provides no support for her contention that Drs. Harper and Rea are not qualified to provide an assessment of Plaintiff's mental abilities

24

because they are not psychiatrists, and the Court is unable to find support for this contention. *See, e.g., Smith v. Astrue*, No. 08-1052-MLB, 2009 WL 1580311, at *8 (D. Kan. June 4, 2009) (unpublished) ("A treating physician is qualified to give a medical opinion as to a claimant's mental state as it relates to their alleged disability and the ALJ may not discredit their opinion on the ground that the treating physician is not a psychiatrist.") (citing *Nguyen v. Barnhart*, 170 Fed. Appx. 471, 473 (9th Cir. March 8, 2006); *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir.1995); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987); *Barrager v. Astrue*, No. 06-1150-WEB, 2007 WL 2377049, at *7 (D. Kan. Aug. 13, 2007) (unpublished); *Wren v. Astrue*, No. 06-1158-MLB, 2007 WL 1531804, at *4 (D. Kan. May 23, 2007) (unpublished)).  As explained above, since the ALJ found that the opinions of Drs. Harper and Rea were inadequate, he was required to either recontact those doctors, request additional existing records, ask Plaintiff to undergo a consultative examination, or ask for more information from another source, including from Plaintiff. *See* 20 C.F.R. §§ 404.1520b(c)(1)-(4) and 416.920b(c)(1)-(4).  Regardless, if the ALJ did not consider Listing 12.07 because he rejected the opinions of Drs. Harper and Rea for the reasons stated by Defendant, the ALJ is required to explain this in his opinion so that the Court can assess whether relevant evidence supports that conclusion.  The Court, therefore, finds that, on remand, the ALJ should consider whether Plaintiff meets or equals Listing 12.07 in light of the proper consideration of the opinions of Plaintiff's treating physicians, as set forth above.

In addition, the Court finds that, on remand, the ALJ will also need to reassess Plaintiff's credibility, considering the possible effect of having somatoform disorder on Plaintiff's credibility. The ALJ found that Plaintiff was not credible, in part, because he found that Plaintiff's allegations

of disabling pain were "out of proportion with the record." [*Doc. 17-3* at 26].  As explained by the Tenth Circuit in *Tolbert v. Chater*, No. 96-5120, 107 F.3d 21, 1997 WL 57091, at *3 (10th Cir. Feb. 11, 1997) (unpublished), an ALJ's error in rejecting a somatoform pain disorder diagnosis without providing any explanation for doing so "infected [the ALJ's] evaluation of [the claimant's] subjective complaints of pain and, therefore, [the ALJ's] evaluation of [the claimant's] credibility." The Tenth Circuit in *Tolbert* stated that, on remand, the ALJ should "reassess the credibility of [the claimant's] testimony, considering the possible effect of the diagnosis of somatoform pain disorder." *Id.* (citing *Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir.1987) (holding that one of the factors an ALJ should consider in evaluating allegations of pain is "the possibility that psychological disorders combine with physical problems")).

## C.  The ALJ's Consideration of Chronic Fatigue and Chemical and Environmental Sensitivity Diagnoses

Lastly, Plaintiff contends that the ALJ erred by failing to properly consider Dr. Rea's diagnoses of chronic fatigue syndrome and numerous environmental and chemical sensitivities, and that these diagnoses should have been taken into consideration at step two and in the ALJ's RFC determination at step four.  [*Doc. 27-1* at 29-33].  Because the Court finds that this case should be remanded for additional proceedings based on the ALJ's assessment of the opinions of Drs. Harper and Rea, the ALJ will be required to re-assess Plaintiff's step-two impairments and her RFC in light of the consideration given to those findings.  It is, therefore, unnecessary for the Court to reach Plaintiff's alleged errors regarding the ALJ's consideration of these diagnoses at this time because those findings could be affected by the ALJ's resolution of this case on remand.

## VI.  Conclusion

For the reasons stated above, the Court **FINDS** that the Commissioner's decision should be remanded to properly consider the opinions of Plaintiff's treating physicians, and the application of Listing 12.07 at step three and in Plaintiff's credibility assessment, as set forth above.

**IT IS THEREFORE ORDERED** that, for the reasons stated above, ***Plaintiff's Motion to Reverse and Remand Commissioner's Administrative Decision (Doc. 27)*** is **GRANTED** and this case is **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

_Lourdes a. Martinez_
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**